```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/4/2014
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
AMANDA COSTELLO and LONIECE REED,                                 :
individually and on behalf of all other persons                   :
similarly situated,                                               :     1:13-CV-1359-GHW
                                                                  :
                                        Plaintiffs,               :     MEMORANDUM OPINION
                                                                  :         AND ORDER
                -against-                                         :
                                                                  :
KOHL'S ILLINOIS, INC., KOHL'S CORP., and                          :
KOHL'S DEPARTMENT STORES, INC.,                                   :
                                                                  :
                                        Defendants.               :
------------------------------------------------------------------X

GREGORY H. WOODS, District Judge:

Plaintiffs Amanda Costello and Loniece Reed (collectively, "Plaintiffs") bring this lawsuit on behalf of themselves and other similarly situated employees against Kohl's Illinois, Inc., Kohl's Corp., and Kohl's Department Stores, Inc. (collectively, "Kohl's" or "Defendants") alleging that Kohl's violated provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*[1] Plaintiffs allege that they and other Children, Footwear, and Home Assistant Store Managers ("CFH ASMs") and Apparel and Accessories Assistant Store Managers ("AA ASMs") (collectively, "ASMs")[2] were misclassified as exempt from the FLSA and are thus entitled to overtime for hours worked in excess of forty hours per week. Before the Court is Plaintiffs' motion to conditionally certify an opt-in collective action pursuant to 29 U.S.C. § 216, to require Kohl's to disclose the

---

[1] Costello also brings claims on behalf of herself and a class of New York Kohl's employees under the New York Labor Law, N.Y. Lab. Law § 650 *et seq.*, and related New York state regulations. Those state law claims are not relevant to the instant motion, which solely concerns the FLSA.

[2] Kohl's employs several other types of assistant store managers, *see infra* at 2, but this suit is brought only on behalf of AA and CFH ASMs. Thus, references in this opinion to "ASMs" refer only to AA and CFH ASMs.

names and contact information of former and current ASMs, and to authorize the sending of notice to those ASMs. For the reasons that follow, the motion is granted.

**I.     Background**

Kohl's is a department store that operates approximately 1,160 stores nationwide. Shields Dep.[3] 36; Shields Decl. ¶ 3. Kohl's organizes its stores into four territories, 18 regions, and 91 districts, which each contain approximately 12 to 14 stores. Shields Dep. 36-37. Kohl's employs various territory and regional managers, as well as one district manager per district. Shields Dep. 40, 45. Within each store, Kohl's employs a store manager, up to five types of assistant store managers (including the two ASM positions at issue in this suit), and various associates. Shields Dep. 45-46. There are approximately 3,500 AA and CFH ASMs nationwide. *See* Def. Br at 1.[4]

Kohl's contends that the AA ASM position has "overall management responsibility for the sales area of a Kohl's store" for apparel and accessories and "is generally responsible for the supervision of, on average, anywhere from approximately 20 to 60 Kohl's associates." Shields Decl. (Dkt. No. 58-2) ¶ 6. Likewise, Kohl's contends that the CFH ASM position has "overall management responsibility for the sales area of a Kohl's store" for children's, footwear, and home goods and "is generally responsible for the supervision of, on average, anywhere from approximately 30 to 35 Kohl's associates." Shields Decl. ¶ 7. Both CFH and AA ASMs have shared a job position description since at least 2006. *See* Shields Dep. 58-67; Position Descriptions (Dkt. No. 44-3). The most recent job position description, which is similar to prior descriptions, summarizes the ASM

---

[3] Deposition testimony was submitted by both sides in excerpted form as various exhibits attached to declarations of Mark Hepworth (Dkt. Nos. 44, 56) and Richard Black (Dkt. No. 58). Full copies of the depositions were provided to the Court on a CD. To the extent the Court cites to pages of deposition testimony that was not submitted as part of these excerpts, Plaintiffs are directed to file at least those pages publicly on ECF no later than September 19, 2014.

[4] Despite referring to this figure throughout their brief, Kohl's does not cite to any evidence as the basis of this number. Plaintiffs do not challenge this figure in their reply brief and it is plausible in the context of the evidence that there are 14,500 full-time employees and 102,000 part-time employees in Kohl's stores nationwide. *See* Shields Decl. ¶ 3.

position as follows: "These positions play an integral role as part of the Store Management Team. Each has the responsibility of management and supervision of all Associates in these areas. Responsibilities include leading the Store in the following areas:  Associate development, supervision of merchandise sales areas to ensure execution according to Kohl's Best Practices, communications, analysis of business operations, expense management, and general management of the Store as part of the Store Management Team." Position Descriptions at Bates KCO_04571.  Kohl's classifies all ASMs nationwide as exempt from the overtime provisions of the FLSA and pays them on a salary, rather than hourly, basis.  *Id.*; Shields Dep. 46, 54.

Costello and Reed were both employed by Kohl's as ASMs.  Costello was an ASM in two stores in Woodbury and Wallkill, New York from approximately April 2010 through December 2012.  Compl. ¶ 8; Costello Dep. 53-54.  Reed was an ASM in two stores in Stafford and Culpepper, Virginia from approximately June 2008 through March 2010.  Compl. ¶ 11; Reed Dep. 92-93.  Costello and Reed allege that they worked more than 40 hours per week, during which they performed primarily routine, non-managerial work.  Compl. ¶¶ 34-37; *see also, e.g.,* Costello Dep. at 121-22, 226; Reed Dep. at 209-10.  Both before and after the instant motion was filed, ten other ASMs who have worked in stores in eleven states – including  Wisconsin, New Mexico, Minnesota, North Carolina, West Virginia, Pennsylvania, Illinois, Texas, Missouri, Alabama, and Nebraska – have opted-in as plaintiffs in this case.  *See* Backhuas Dep. at 139-40; Alexander Dep. at 39-40; Escoto Decl. (Dkt. No. 44-8) ¶ 2; Land Decl. (Dkt. No. 44-9) ¶ 1; Shields Decl. ¶ 16; Consents to Join filed by Nohr, McCorkle, Hughes, and Boruch (Dkt. Nos. 62-64, 68).

Discovery in this case was bifurcated to first permit discovery related to the instant motion. Scheduling Order (Dkt. No. 25) ¶ 6.  Thus, the opt-in plaintiffs who joined relatively early on in the case – Costello and Reed, as well as Vonda Backhaus and Homer Alexander – were deposed.  Three corporate representatives from Kohl's were deposed pursuant to Fed. R. Civ. P. 30(b)(6).  The

parties also exchanged documentary discovery, some of which has been submitted to the Court in connection with this motion. In addition to this discovery, both sides have submitted various declarations: plaintiffs submitted declarations from Yuri Escoto and Londrell Land, who joined the action after the limited discovery period had closed but before the instant motion was filed, and Kohl's submitted six declarations from current and former ASMs who spend only a small percentage of their time on non-management duties.

## II.     Discussion

### A.  Standard for Conditional Certification of an FLSA Collective Action

The FLSA requires employers to pay their employees overtime wages at a rate of time and a half for hours worked in excess of 40 hours a week, unless the employees are exempt from the provisions of the FLSA. 29 U.S.C. § 207. The FLSA provides an exemption for "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).

The FLSA provides that an action for unlawful employment practices may be brought "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 28 U.S.C. § 216(b). Unlike class actions, FLSA collective actions need not satisfy the requirements of Fed. R. Civ. P. 23, and only plaintiffs who "opt in" by filing consents to join the action are bound by the judgment. *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *2 (S.D.N.Y. Sept. 16, 2013). District courts have "'discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.,* 624 F.3d 537, 554-55 (2d Cir. 2010) (quoting *Hoffman–La Roche Inc. v. Sperling,* 493 U.S. 165, 169 (1989) (alteration in original)).

The Second Circuit has endorsed a two-step method to certify FLSA collective actions. *Myers,* 624 F.3d at 555. "The first step involves the court making an initial determination to send

notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Id.* Courts may approve sending notice if "plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id.* (quoting *Hoffman v. Sbarro, Inc.,* 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.)). The Second Circuit has explained that, in a case such as this that involves an exemption to the FLSA, plaintiffs meet their burden "by making some showing that 'there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions,' on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme." *Id.* (quoting *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1259 (11th Cir. 2008)). Although "unsupported assertions" are not sufficient, the factual showing required "should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Id.*

"This initial burden is limited, in part, because the determination that the parties are similarly situated is merely a preliminary one and may be modified or reversed" at the second stage of the inquiry. *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 369 (S.D.N.Y. 2007) (quotations omitted). The second stage occurs after notice is sent, the opt-in period ends, and discovery closes. *Mendoza*, 2013 WL 5211839, at *2. At that stage, the district court will have a "fuller record" and can then "determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Myers,* 624 F.3d at 555.

### B. Analysis

Plaintiffs are moving for conditional certification of a collective action. To certify a nationwide collective action, Plaintiffs "must ultimately demonstrate a nationwide policy pursuant to

5

which ASMs are assigned duties that render [the employer's] exempt classification inappropriate." *Jenkins v. TJX Companies Inc.*, 853 F. Supp. 2d 317, 323 (E.D.N.Y. 2012). At the conditional certification stage, the burden on the Plaintiffs is not high. Plaintiffs need only make "a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers,* 624 F.3d at 555 (quotations omitted).

      Plaintiffs contend that they and potential opt-in plaintiffs are similarly situated because Kohl's adopted uniform formal policies that applied to all ASMs. Plaintiffs point to evidence that Kohl's maintains uniform job descriptions for ASMs that classify them as exempt. Pl. Br. at 4-10. Kohl's corporate testimony confirmed that these job descriptions are identical nationwide, regardless of a store's location, size, staffing configurations, or sales volume and regardless of an ASM's experience. Shields Dep. 46-69.[5]

      Plaintiffs cannot meet their burden for conditional certification merely by pointing to the fact that the employer has classified all employees in a particular job category as exempt. The Court recognizes that the Second Circuit stated in *Myers* that one way for plaintiffs to meet that burden was "by making some showing that 'there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions,' on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme."

---

[5] Relatedly, Plaintiffs also point to uniform training materials that are made available to ASMs and uniform corporate policies and procedures applicable to ASMs. *See* Pl. Br. at 10-12. Kohl's disputes that all ASMs actually take the same training and that ASMs are given discretion in which training materials to review, but corporate testimony confirms at least that all ASMs are provided access to the same materials. *See, e.g.*, Loomis Dep. 18, 31-33, 37-39, 55-57. Kohl's admits that uniform policies and procedures apply to ASMs, but contends that ASMs must "interpret policies and apply them to their specific buildings and their specific Associates and customers." Shields Dep. 121-22. To the extent Kohl's is arguing that the discretion ASMs may be given with respect to their training and application of corporate policies supports a finding that ASMs are properly classified as exempt, this amounts to a merits-based inquiry inappropriate at this stage. *See Lynch v. United Services Auto. Ass'n,* 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."). The Court finds the mere fact that corporate-wide policies and uniform training materials exist to be of little significance to this motion, however, under the same rationale that it finds a uniform job description to be insufficient on its own.

*Myers,* 624 F.3d at 555 (quoting *Family Dollar*, 551 F.3d at 1258-62). But courts have not interpreted that statement to mean that conditional certification is appropriate simply because an employer uses uniform job descriptions. *Jenkins*, 853 F. Supp. 2d at 322; *see also Family Dollar*, 551 F.3d at 1264 n. 46 ("Just because a business classifies all employees in a particular job category as exempt does not mean that those employees are necessarily 'similarly situated' for purposes of a 29 U.S.C. § 216(b) collective action."); *Jenkins*, 853 F. Supp. 2d at 323 ("'[T]he mere classification of a group of employees – even a large or nationwide group – as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for § 216(b) purposes.'" (quoting *Vasquez v. Vitamin Shoppe Indus. Inc.*, No. 10 Civ. 8820 (LTS), 2011 WL 2693712, at *4 (S.D.N.Y. July 11, 2011)); *Khan v. Airport Mgmt. Servs., LLC*, No. 10 Civ. 7735 (NRB), 2011 WL 5597371, at *4 (S.D.N.Y. Nov. 16, 2011) (where a plaintiff does not attack the job description itself but instead alleges that employees "were not given duties in conformity with these policies[,] . . . 'it is not sufficient for [plaintiff] to show that he and the proposed class operated under the same job description'" (quoting *Guillen v. Marshalls of MA, Inc.,* 750 F. Supp. 2d 469, 476 (S.D.N.Y. 2010) ("*Guillen I*"))). Indeed, if a uniform job description by itself was sufficient, every business in corporate America would be subject to automatic certification of a nationwide collective action on the basis of the personal experiences of a single misclassified employee. The test described in *Myers* does not mandate that result.

The question presented is not simply whether or not Plaintiffs were subject to a common plan or policy, but, rather, whether or not they were victims "of a common policy or plan *that violated the law.*" *Myers,* 624 F.3d at 555 (quotations omitted and emphasis added). In this case, Plaintiffs do not allege that the official policy adopted by Kohl's violates the FLSA. Instead, Plaintiffs contend that, in practice, they and other ASMs primarily performed non-exempt duties. Compl. ¶ 36. Because they do not assert that the formal policy violates the law, to obtain conditional certification

7

the Plaintiffs must make a modest factual showing that they were subject to a common "de facto illegal policy." *Jenkins*, 853 F. Supp. 2d at 322. In order to meet this burden, Plaintiffs must provide evidence of "'some identifiable nexus which binds the named plaintiffs and potential class members together as victims of a particular practice.'" *Id.* (quoting *Sbarro*, 982 F. Supp. at 261). Here, Plaintiffs "must demonstrate" that they are "similarly situated 'with respect to the claim that they were required to perform nonmanagerial job duties in contravention of the formal job description.'" *Id.* at 324 (quoting *Khan*, 2011 WL 5597371, at *4)). In other words, "plaintiff must provide 'actual evidence' of a link between plaintiff's situation and those in the proposed collective action." *Guillen v. Marshalls of MA, Inc.*, 841 F. Supp. 2d 797, 803 (S.D.N.Y. 2012) ("*Guillen II*"), *adopted*, No. 09 Civ. 9575 (LAP), 2012 WL 2588771 (S.D.N.Y. July 2, 2012) (citing *Prizmic v. Armour, Inc.*, No. 05 Civ. 2503 (DLI)(MDG), 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006)).

The Court concludes that Plaintiffs here have met their burden – at least under the very low threshold at first-stage certification. *See Damassia v. Duane Reade, Inc.,* No. 04 Civ. 8819 (GEL), 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006) ("[A] plaintiff's burden at this preliminary stage is minimal." (quotations omitted)). Kohl's own documents acknowledge that ASMs nationwide are expected to perform at least some non-exempt work. *See* Position Descriptions at Bates KCO_02801, KCO_04572, KCO_04575. The most recent job description sets forth tasks "to be [d]elegated" but nonetheless acknowledges that "[d]uring the course of business and general management of the store, there may be situations that require non-exempt tasks to be physically completed by management. This is limited to situational training to further enhance Associate development, while providing leadership and direction related to Kohl's best practices and while providing a visual experience when directing workflow to Associates." Position Descriptions at Bates KCO_04572.

8

Moreover, an ASM leadership training document submitted by Kohl's describes a "70/30 rule," which provides that "no more than 30 percent of your time should be spent performing activities that are classified as non-leadership." Def. Ex. S. at Bates KCO_01232. That document further states that "[i]f you find you are consistently spending more than 30% of your workday doing instead of leading, you aren't being as effective as you could be. That's because while you are doing the tasks, you are not teaching the team how to do the tasks themselves." *Id.* at Bates KCO_01233. This is essentially an acknowledgment by Kohl's – important enough to be a part of nationwide training available to ASMs – that at least some ASMs consistently spend more than 30 percent of their time engaged in non-managerial tasks. While Kohl's position is of course that ASMs must meet these expectations, *see* Def. Br. at 10-11, the Court concludes that this acknowledgment, when coupled with the evidence described below, is enough for it to determine that conditional collective action certification is warranted. *See Ferreira v. Modell's Sporting Goods, Inc.*, No. 11 Civ. 2395 (DAB), 2012 WL 2952922, at *3 (S.D.N.Y. July 16, 2012) (distinguishing *Jenkins*, *Guillen I*, and *Guillen II,* where plaintiffs "did not produce any evidence of a corporate policy requiring the performance of non-exempt job duties," from case where employer's job descriptions "demand the performance of nonexempt duties" and "even the Declarations submitted by Defendants in opposition to conditional certification indicate that Assistant Managers spend at least a portion of their time on non-exempt duties").

The deposition testimony from the opt-in plaintiffs establish that their claim that ASMs engage primarily in non-managerial duties is based not only on their own personal experience, but also observations and discussions within the stores that they worked and communications with other ASMs at districtwide meetings. *See Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 403 (S.D.N.Y. 2012) ("[C]ourts in this Circuit regularly rely on hearsay evidence to determine the propriety of sending a collective action notice" – an approach that is "consistent with the purpose of

conditional certification which is only a preliminary determination as to whether there is a sufficient showing to warrant notice being sent to the purported collective class to allow members to opt-in to the lawsuit." (alteration and quotations omitted)). For example, Costello testified that she attended districtwide meetings encompassing approximately 14 stores. Costello Dep. 54. At these meetings, she had occasion to meet ASMs from other stores and discuss problems they were experiencing, including "how much time you spent on a register[;] I can't get anything done because I'm on a register all the time. Or I can't get anything done because I'm in customer service all the time." Costello Dep. 67; *see also* Costello Dep. at 206 ("I know that there was other assistant managers in my specific two districts that did not have anything to do with payroll and expense management."); Costello Dep. 214 (referencing conversations with other ASMs where "they told me about their task-based days"); Alexander Dep. 45-46 (describing visits to stores where he did not work to "look at who does what, who's pulling merchandise out, who's merchandising things to the book properly" and "see if they had the same pains that I had"); Alexander Dep. at 161 ("I spoke to several other managers, and the same practices that I had on the individuals that I had spoken to had the exact same instances happen in their stores."); Backhaus Dep. 99-100 (after districtwide meetings, ASMs "would talk with other area supervisors, assistant store managers . . . about changes within the organization").

Notably, Alexander and Backhaus both testified to thin staffing related to reductions in hourly associates. Based on his observations in other stores and discussions at districtwide conferences, Alexander testified that "everybody had the same pain, less hours for hourly associates, less payroll. So when you have less hours, less payroll for any store, that means the manager has to pick up the slack and merchandise and unload trucks and do everything that you have to." Alexander Dep. at 47. Backhaus also testified that following districtwide meetings, she would speak to other ASMs about "the changes" at Kohl's, including "the amount of hours that [ASMs] were

working" and "[m]ostly, it would be about [Kohl's] cutting budgets and not having enough hours for people to complete tasks, especially the truck. . . .  [T]hey were slashing payroll hours."  Backhaus Dep. 99-100; *see also* Compl. ¶ 39 (alleging violations were committed "pursuant to its centralized, company-wide policy, pattern or practice of attempting to minimize labor costs").  This testimony provides a substantive theory – budget and staffing cuts that resulted in ASMs performing non-managerial tasks – to tie Plaintiffs' claims to a policy or practice that affected ASMs nationwide.  *See Indergit v. Rite Aid Corp.*, No. 08 Civ. 9361 (PGG), 2010 WL 2465488, at *7 (S.D.N.Y. June 16, 2010) (granting conditional certification based on evidence that included, *inter alia*, "affidavits alleging that they were victims of a corporate-wide policy that left store managers with fewer overtime hours in their labor budget than was necessary and forced them to perform mainly non-exempt duties").

In reaching this conclusion, the Court expressly rejects the argument that conditional certification of a nationwide collective action is mandated whenever a sufficiently large number of plaintiffs have asserted claims or whenever those plaintiffs span a sufficiently widespread geographic area; there is no such per se rule.  Plaintiffs, nonetheless, argue that since 2006, "no motion for FLSA conditional certification in this Circuit has been denied where the Plaintiffs have worked in 3 or more states . . . ."  Pl. Reply Br. at 1, n. 1.  In this case, out of 3,500 ASMs nationwide, the Court has before it evidence from only six ASMs who have worked across the country and consents to sue from six additional ASMs, also from around the country.  The Court has considered the number and geographic dispersion of the ASMs who have opted in to this action and believes that they weigh only slightly in favor of granting conditional certification.  The existence of many or widespread plaintiffs is, at best, evidence from which an inference might be drawn about the existence of a common illegal policy or plan.  The probity of drawing such an inference, however, will turn in part on the number of plaintiffs from whom the Court has evidence compared to the size of the pool of potential opt-in plaintiffs.  It may also be affected by the commonality of the substantive testimony

or affirmations that the plaintiffs provide. While the required factual showing for conditional certification is modest, the mere existence of a certain number of plaintiffs, covering a sufficiently widespread geographic area, should not be expected by itself to give rise to a legally sufficient basis to find that plaintiffs are similarly situated across the nation.[6] The key remains whether there is "actual evidence of a link" between plaintiffs and those across the nation, *Guillen II*, 841 F. Supp. 2d at 803 (quotations omitted), which has been demonstrated here through the Kohl's documents and deposition testimony described above.

Kohl's argues that certification is not warranted because a variety of factors – a store's location, size, layout, climate, the number of executives, and the experience of team members – result in ASMs performing dissimilar duties. Def. Br. at 3-4; 24. Relatedly, Kohl's also argues that the deposition testimony between the opt-in plaintiffs, as well as several declarations from current and former ASMs submitted by Kohl's,[7] demonstrate that ASMs all perform their job very differently. But corporate deposition testimony from Kohl's makes very clear that it classifies all

---

[6] Several cases within this Circuit that have denied collective action certification were presented with evidence from fewer and more geographically concentrated plaintiffs than here. *See*, *e.g.*, *Jenkins*, 853 F. Supp. 2d at 321-22 (conditional certification denied where a movant relied upon a uniform job description and only his own deposition testimony with "no other affidavits, depositions, or even hearsay evidence that he was actually aware of other ASMs who also primarily performed non-exempt duties"); *Vasquez*, 2011 WL 2693712, at *3 (conditional certification denied where a movant relied upon a uniform job description and evidence from a limited "geographically concentrated cluster"); *Guillen I*, 750 F. Supp. 2d at 477 (rejecting certification where evidence was "exclusively" from stores in New York City metropolitan area); *Ahmed v. T.J. Maxx Corp.*, No. 10 Civ. 3609 (ADS), 2013 WL 2649544, at *13 (E.D.N.Y. June 8, 2013) (rejecting certification where evidence was from an "extremely limited" geographic region). While those cases distinguish themselves from cases involving more plaintiffs or more geographically-diverse plaintiffs, the Court does not believe that the cases stand for the proposition that conditional certification should be given based on number or geographic dispersion of plaintiffs alone.

[7] The Court finds these declarations – dubbed "happy camper" declarations by Plaintiffs – to be of limited value to the instant motion, during which the Court is not to weigh evidence and make credibility determinations. *See Stevens*, 2012 WL 4801784, at *3 ("'[S]uch evidence cannot be used to undermine a plaintiff's initial showing because doing so would require a court to weigh evidence and determine credibility,' which is not appropriate until the second stage after discovery." (quoting *Ferreia*, 2012 WL 2952922, at *3)). Moreover, to the extent the Court would consider them, it is not clear that the declarations help Kohl's. *See Damassia*, 2006 WL 2853971, at *7 ("On the one hand, by emphasizing that the affiants have 'very different[ ]' job responsibilities than the named plaintiffs and are thus not "similarly situated" to the plaintiffs, defendant appears to be conceding, albeit indirectly, that the named plaintiffs did *not* perform primarily managerial responsibilities. . . . On the other hand, to the extent defendant presents the 56 affidavits as evidence that all assistant managers, including plaintiffs, exercise substantial management responsibilities, defendant is not only making a premature argument on the merits, but appears to be conceding that plaintiffs and other assistant night managers are similarly situated.").

ASMs identically, no matter any of these factors, and the decisions are made based upon the job descriptions as written and not any actual job duties. *See* Shields Dep. 49, 53 (explaining that the decision to classify ASMs as exempt is based upon "the job descriptions clearly as the document that we review" and no management authority can change the exempt status of an ASM). Indeed, Plaintiffs argue that that Kohl's has failed to conduct time studies or audits to ascertain the actual duties ASMs perform. Pl. Br. at 8; *see also* Compl. ¶ 38 ("Kohl's did not perform a person-by-person analysis of every ASM's job duties when making the decision to classify all ASMs . . . as exempt."). Even though a uniform job description is not by itself sufficient for Plaintiffs to meet their burden, Kohl's cannot argue that "responsibilities of individual Kohl's ASMs varied," that ASMs' job performance is "unique," and that ASMs "performed their jobs in dramatically different ways" – whether due to a store's location, size, or other factors – preclude collective litigation, while simultaneously classifying each and every ASM identically, without undertaking any individualized analysis. *See Family Dollar*, 551 F.3d 1233, 1264 (arguments that a store's size, sales volume and location "cause store managers' job duties to vary and preclude a collective trial" are belied by evidence that an employer "never examined how store managers spent their time and that none of those factors had anything to do with [the employer's] decision to exempt all store managers from overtime pay").

There is no requirement that all collective action members be identically situated; rather, they must be similarly situated. *See Damassia*, 2006 WL 2853971, at *6 ("On defendant's logic, no group of opt-in plaintiffs would ever be 'similarly situated' unless they were clones of one another working in completely identical stores, in identical neighborhoods, with identical clientele."). Moreover, courts do not "resolve factual disputes . . . or make credibility determinations" during the first-stage certification. *Lynch*, 491 F. Supp. 2d at 368. The factual variances identified thus far do not defeat conditional collective action certification at this first-stage, where the goal is to determine "merely . .

. *whether* 'similarly situated' plaintiffs do in fact exist." *Myers*, 624 F.3d at 555.[8]  Plaintiffs have satisfied this "low" standard of proof.  *Id.*

### C. Request for Disclosure and Notice

Plaintiffs have requested that Kohl's produce a list in electronic format that includes the names, addresses, telephone numbers, dates of employment, locations of employment, and work and personal e-mail addresses of all persons employed by Kohl's as AA and CFH ASMs at any time from February 28, 2010 – three years prior to the filing of the complaint – through the present.[9]  Defendants have not stated any opposition to this request, and indeed, courts routinely approve similar requests once conditional certification has been granted.  *See, e.g., Jacob*, 2012 WL 260230, at *9 (collecting cases).  Defendants are ordered to produce this information to Plaintiffs no later than September 25, 2014.

Plaintiffs request that the Court authorize the distribution of notice, but they have not submitted a proposed notice and instead propose conferring with Kohl's regarding the form and dissemination of the notice.[10]  Pl. Br. at 23.  Courts have the authority to order such notice, *see Hoffmann-La Roche,* 493 U.S. at 170, and the Court finds that it is appropriate to do so in this case.  The parties must, however, submit a proposed notice for approval so the Court "can ensure that it is timely, accurate, and informative."  *Id.*  The Court directs the parties to confer on both the form and dissemination of the notice by September 12, 2014.  The parties shall thereafter, no later than

---

[8] The Court notes that "[i]f the fruits of full discovery reveal that plaintiffs are not, in fact, similarly situated to defendants' other employees" the collective action may be decertified or divided.  *Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 369 (S.D.N.Y. 2007).

[9] Although this time period may ultimately prove to be over-inclusive, the Court nonetheless grants Plaintiffs' apparently unopposed request for disclosure of employees who worked during this time period.  *See Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007) (permitting disclosure of names from three years prior to the complaint's filing to the present "[o]ut of an abundance of caution" and "to avoid any merit-based determinations" at the first-stage inquiry).

[10] The Court is aware that the scheduling order previously issued in this case directs the parties to confer on the form of notice only in the event that the instant motion is granted.  Scheduling Order (Dkt. No. 25) at ¶ 6.

September 19, 2014, submit via ECF a joint letter that attaches the proposed notice and requests the Court's approval of both the notice and the procedures for its dissemination (and, to the extent the parties are unable to reach an agreement, identifies such disputes).

### III.     Conclusion

For the foregoing reasons, Plaintiffs' motion to conditionally certify an FLSA collective action is granted.  Kohl's is ordered to disclose the aforementioned information about its employees by September 25, 2014.  The parties shall confer on the form and dissemination of notice by September 12, 2014 and submit the notice as described above by September 19, 2014.  The parties shall also submit a proposed scheduling order for the remainder of discovery and all anticipated motions no later than September 19, 2014.  *See* Scheduling Order (Dkt. No. 25) ¶ 6.  A status conference will be held on September 23, 2014 at 3:30 p.m. in Courtroom 9A of the United States District Court for the Southern District of New York, Daniel Patrick Moynihan U.S. Courthouse at 500 Pearl Street, New York, New York, 10007.  The Clerk of Court is directed to close the pending motion at Dkt. No. 42.

SO ORDERED.

Dated:  September 4, 2014  
New York, New York

_____  
GREGORY H. WOODS  
United States District Judge