F1MSCOSC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   AMANDA COSTELLO, et al.,

 4                   Plaintiffs,

 5            v.                            13 Civ. 1359 (GHW)

 6   KOHL'S ILLINOIS, INC., et al.,

 7                   Defendants.

 8   ------------------------------x
                                           New York, N.Y.
 9                                         January 22, 2015
                                           5:00 p.m.
10
     Before:
11
                          HON. GREGORY H. WOODS,
12
                                              District Judge
13
                             APPEARANCES
14
     HEPWORTH, GERSHBAUM & ROTH, PLLC
15        Attorneys for Plaintiffs
     BY:  MARC S. HEPWORTH
16
     LITTLER MENDELSON, P.C.
17        Attorneys for Defendants
     BY:  RICHARD W. BLACK
18

19

20

21

22

23

24

25
```

F1MSCOSC

1          (Case called)

2          THE COURT:  Good afternoon.  We are here to discuss

3     your proposals with respect to the conduct of the second phase

4     of discovery in this case.  There are a number of issues, and I

5     would like to try to address all of them today.

6          Let's start, if we can, with the overarching

7     framework, which is the amount of time collectively that you

8     have requested to conduct this discovery.

9          First, can you tell me, why nine months?

10         MR. HEPWORTH:  When we met and conferred, plaintiffs'

11    counsel had suggested six.  Defendants' counsel had suggested

12    nine.  As a result, in an effort to come to an agreement on

13    some issues, we mutually agreed on the nine months.  This the

14    reason between the two, not much more to it than that.

15         MR. BLACK:  Your Honor, if I can clarify.  Actually,

16    when we met and conferred, defendants had initially taken the

17    position that 12 months was appropriate.  We ended up agreeing

18    on nine months.

19         THE COURT:  Thank you.  Understood.

20         MR. BLACK:  Yes, your Honor.

21         THE COURT:  Good.  I will just say at the outset that

22    that is a very long amount of time, understanding that there is

23    a lot of work to be done in this case.  Look at the remainder

24    of the requests through that frame.

25         Let's start, if we can, with I will call the category

F1MSCOSC

1   of requests by the defendants for discovery.  First, I would

2   like to discuss the written discovery from the named

3   plaintiffs.  If I understand it, defendants want ten

4   interrogatories, ten requests for production, ten requests for

5   admission.  Plaintiff wants five of each of those categories of

6   requests.

7          Let me hear from each of you with respect to that.

8   First, since defendant is asking for a number of them, let me

9   ask you to please address this.

10          MR. BLACK:  Yes, your Honor.

11          Your Honor, in considering the scope of written

12   discovery on the named plaintiffs during second phase, we have

13   taken into account the fact that we were able to serve

14   interrogatories during the first phase.  We did not, your

15   Honor, reach the limit of our interrogatories and document

16   requests to plaintiffs in the first phase.

17          We took that into account thinking, your Honor, that

18   ten was a reasonable number with respect to the named

19   plaintiffs for any additional issues that may arise during the

20   second phase.  In fact, your Honor, you will recall that the

21   first phase was limited to conditional certification issues.

22          Your Honor, there are issues we want to ask the

23   plaintiffs about.  We didn't have an opportunity to before.  We

24   treated them differently than we have the opt-in plaintiffs

25   because they are the named plaintiffs in the case.

F1MSCOSC

1          THE COURT:  Why ten, particularly with respect to

2    interrogatories?

3          MR. BLACK:  Sure.  Ten interrogatories, your Honor, I

4    believe we served ten before.  That would give us 20 for the

5    entire case toward the named plaintiffs, which, generally

6    speaking, is a little less than we may have been entitled to

7    otherwise.

8          Your Honor, when we think a little bit about what kind

9    of questions we might ask, there are questions we might ask

10   about the named plaintiffs about the opt-in group about

11   information we learn about them that we couldn't ask of the

12   opt-in themselves, which is the reason why that number is

13   slightly higher.

14         THE COURT:  Why do you expect that the named

15   plaintiffs would have additional information as a whole or

16   other members of the opt-in group?

17         MR. BLACK:  Your Honor, some of these opt-ins may be

18   folks that worked in the same stores.  They may know a bit

19   about what these people may did.  They worked alongside them.

20   To the extent they have the information, your Honor, we would

21   like to probe that.

22         THE COURT:  Thank you.

23         For my information, how do you envision staging

24   delivery of your interrogatories and other written discovery

25   requests to the named plaintiffs as opposed to the remainder?

F1MSCOSC

1   Do you do the named plaintiffs first then the remainder,

2   whatever I permit?  How are you thinking about going about

3   that?

4             MR. BLACK:  Sure.  Your Honor, I suspect there are

5   some interrogatories we would serve right out of the gate on

6   the named plaintiffs, and some more that we may serve after we

7   get a little further down the road on opt-in discovery.  It may

8   be broken up.

9             THE COURT:  Thank you.

10            Mr. Hepworth, you have countered five of each.

11            MR. HEPWORTH:  I did, your Honor.  Respectfully, with

12   respect to counselor's comments, of all the issues here, I

13   believe this is one of the more minor issues.  I will say

14   specifically that the first phase deposition of the named

15   plaintiffs was a full seven-hour deposition.  They even took

16   the merits in that deposition and we did not.

17            Although at that point it was first phase, it wasn't

18   like they were going to take whether or not these individuals

19   were similarly-situated and then move forward in second phase

20   and re-depose them.  They have been fully deposed seven hours.

21   If they used a little less time, off the top of my head, I

22   don't recall, pretty close to that.  They went into the second

23   phase questions with respect to the merits in the first phase.I

24   believe they propounded approximately 13 interrogatories and

25   approximately 20 RFPs.

F1MSCOSC

1      With respect to whether or not, I believe one of the

2  comments Mr. Black said, whether or not these individuals may

3  have worked alongside our individuals.  They know the answers

4  to that.  At one point, they were either present employees or

5  former employees of Kohl's.  To the extent that Ms. Costello

6  worked alongside one of the opt-ins, number one, they would

7  know that.  Number two, in our initial disclosures, as well in

8  our responses, we listed everybody that our client -- we did

9  not reserve our right to amend for second phase.  We just said,

10  here is all my clients' information, here is everything bates

11  stamped, and here is everybody they know.

12      THE COURT:  Thank you.

13      Let me turn to you, again, Mr. Black, with respect to

14  written discovery from the opt-ins.  I understand that they are

15  going to be asked, in this case, that the defendant is seeking

16  for five interrogatory requests for production and requests for

17  admissions from each of the opt-ins.  In other words, all of

18  the opt-ins, whereas plaintiff is proposing five for each, for

19  only the opt-ins who are deposed.

20      Can you explain to me, please, Mr. Black, why you

21  think the written discovery is appropriate from all of the

22  opt-ins?  I am very interested in hearing what the nature of

23  the questions are that you intend to ask.  Mr. Hepworth made

24  the point just now in his remarks, as he did in his letter, in

25  some of the cases that he cited, that you, Kohl's, may be

F1MSCOSC

1   capable of knowing some information.  I am interested in

2   knowing if you are asking about things that you could otherwise

3   know through inquiry at Kohl's.  Are you asking for something

4   else?

5           MR. BLACK:  Sure, your Honor.  I can tell you, jumping

6   right to that issue, we would be asking for something else,

7   your Honor.  The idea would not be to propound discovery on the

8   opt-ins seeking information that we already have in our

9   possession.

10          Your Honor, the backdrop against which we seek

11  discovery of each of the opt-ins and very limited written

12  discovery, your Honor, five interrogatories, five document

13  requests, is that these individuals, your Honor, unlike a

14  Rule 23 action, they are not absent class members.  They are

15  party plaintiffs and the Fair Labor Standards Act itself makes

16  that clear.  They are plaintiffs in a case.

17          Your Honor, that, we believe, should expose them to

18  discovery.  Part of Kohl's ability to exercise due process

19  necessary to seek the certification to oppose a Rule 23 motion

20  on the New York claims is that with respect to the individuals

21  who are now plaintiffs in this case, part and parcel of Kohl's

22  need to figure out what it is that these people know.  Your

23  Honor, with respect to some of the cases that were cited on

24  both sides, I wanted to draw attention to a couple of things.

25          There was a case that was cited by plaintiffs' counsel

F1MSCOSC

```
1   on the general notion that the discovery demands that Kohl's is

2   seeking would defeat the purpose contemplated by Congress and

3   authorized in collective actions.  It is the Higueros case

4   cited by Judge Boyle in the Eastern District.  Your Honor, that

5   all needs to be understood in context.  I think the context of

6   that decision informs a bit about the issue you have asked

7   about, opt-in discovery, opt-in written discovery.

8         In that case, your Honor, the issue was not whether

9   written discovery should be permitted to all the opt-ins.  In

10  fact, that had happened in that case already.  The issue in

11  that case had to do with whether the defendant would be able to

12  depose all of the opt-in plaintiffs.  It was entirely different

13  issue.  But, in fact, in that decision, your Honor, opt-in

14  discovery had been served on all of the individuals.  There is

15  no shortage of decisions, your Honor, that permit that.

16        Going to your specific question, your Honor, we have

17  dealt with those issues in the letters.  I won't belabor it

18  anymore.  There are things, your Honor, that we believe these

19  individuals would have in their possession in terms of

20  information that we would not necessarily have, understanding

21  that the mix of these opt-ins is largely former employees.  So

22  they're not folks for whom we currently have control or

23  information or, in fact, information about them after they left

24  Kohl's.

25        THE COURT:  Can I just ask a question before you go
```

F1MSCOSC

1   on?

2           MR. BLACK:  Yes.

3           THE COURT:  Do you have a statistic on that for me?

4   In other words, what percentage of opt-ins are former versus

5   current employees?

6           MR. BLACK:  Your Honor, we looked at that back when

7   the opt-in period closed on December 8.  We have had a

8   continuing run of opt-ins after the date.  I haven't looked at

9   it since then.  I can tell your Honor that, at the time, the

10   numbers were running upwards of 70 to 75 percent former

11   employees as opposed to current employees, and we can certainly

12   get the court the current numbers.

13           THE COURT:  Thank you.  That is satisfactory.

14           MR. BLACK:  Your Honor, in terms of the information

15   that we simply don't have at our disposal about these

16   individuals, I want to preface this by referring the court to

17   the Second Circuit's decision in Miners v. Hertz, which talks

18   about the second phase in evidence, and it talks about what is

19   important on decertification and what is important in

20   Rule 23(b) analysis.

21          What Miners v. Hertz says is that this information,

22   that is, the decision on whether these folks are similarly

23   situated, whether they meet the requirements under 23(b) turns

24   on what they actually did, not what we suppose they did, but

25   what they actually did when they were employed at the

F1MSCOSC

1   defendant.

2          We take that language to heart, your Honor.  They are

3   the only ones in a position to tell us what it is they claim

4   they did, whether they claimed they spent their time performing

5   large tasks or whether they agreed that they spent their time

6   performing managerial tasks.  What they, in fact, your Honor,

7   have represented to other employees post Kohl's, both employers

8   they were employed by and those they applied for employment

9   with, is something that is solely in their possession.

10          In fact, your Honor, that would also be true of

11  current employees to the extent they have a resume that is

12  current.  This is not speculation, your Honor, that there may

13  be important information that is vital to decertification and

14  Rule 23.  Two of the plaintiffs in this case, your Honor, one

15  opt-in and one named plaintiff, produced in discovery resumes

16  and other documents, LinkedIn profiles.  In fact, your Honor,

17  they had plethora of information about the work they performed

18  at Kohl's, the nature of those duties, which goes right to the

19  question of what they actually did.

20          We don't know, your Honor, how many hours they claimed

21  they worked, whether they are entitled to any overtime.  We

22  don't know who they believe has knowledge to support their

23  claims.  These people haven't been in the case before.  We

24  don't have disclosures from these folks.  We don't know what

25  the claims damages are.  We don't know what kind of documents

F1MSCOSC

1  they have to support the claim against Kohl's as a party

2  plaintiff or that might support Kohl's defense.

3          Your Honor, we believe there are critical pieces of

4  information, and that's why we narrowly tailored it to five

5  requests.

6          THE COURT:  Thank you.

7          MR. BLACK:  I would say one more thing, your Honor.

8          THE COURT:  Please do.

9          MR. BLACK:  This ties into the deposition issue.

10  Serving discovery on these individuals, A, I think is part of

11  their duty as a plaintiff now.  We also need that information

12  to be able to determine who we are going to depose.

13          THE COURT:  Thank you, Mr. Hepworth.

14          MR. HEPWORTH:  There is a lot for me to address, but

15  the first thing I want to address is, I think Magistrate Peck

16  said it best -- and I attached my transcript where he

17  specifically said on page 14 -- and no interrogatories.  We

18  don't do interrogatories in the Southern District.

19          There was no shortage of decisions that permit that.

20  There actually is a shortage of decisions that permit that.

21  The reason is, if you look at defendants' papers, there is not

22  a single Southern District decision that permitted

23  interrogatories.  I cited Second Circuit and Southern District

24  cases *ad nauseam*.  If I had 20 pages, I could have kept on

25  going.  To the extent those cases existed, I'm sure Mr. Black

F1MSCOSC

 1   would have put them in there.  They don't exist.

 2           In the case of Scott v. Chipotle, Magistrate Netburn

 3   said no.  In the case of EDS, the answer was no.  In every case

 4   I cited -- I am not going to bore the court with every single

 5   case that I put forth -- the answer was no.  So there is a

 6   shortage.

 7           With that being the case, the defendant does cite a

 8   few cases.  Respectfully, I would like to address those cases.

 9   In the case of Colotti v. St. Joseph, that is the only Second

10   Circuit case they cite, there were 76 opt-ins.  But what is

11   perhaps most important, and the judge went into a lengthy

12   soliloquy in the papers, there were 40 different job

13   descriptions and departments.  So how do you determine whether

14   or not they are similarly situated if you only do 10, 15, 5,

15   2 percent, whatever the number may be, with 40 different job

16   descriptions.

17           In Brooks v. Farm Fresh, again, not New York, there

18   were 125 plaintiffs.  That case was precertification.  This is

19   not where they are doing the depositions of opt-ins.  It is

20   misleading to cite that case.  If you look at the caption, it

21   is a monster of a caption, your Honor.  There is 125 named

22   plaintiffs.

23           With respect to Burkholder v. The City of Fort Wayne,

24   that was not a judicial order; that was a stipulation signed by

25   both parties where they mutually agreed and the judge so

F1MSCOSC

1    ordered it.

2            I am not going to get into every case that the

3    defendants cited.  I am going to tell you that the law in this

4    circuit, as indicated by Judge Netburn, as indicated by Judge

5    Peck, as indicated by all the other cases that I have cited,

6    there is no interrogatories on all the individuals.

7            Judge Boyle's words, as I said, specifically --

8            THE COURT:  I don't want to interrupt your flow.

9            MR. HEPWORTH:  That's okay.

10           THE COURT:  At the same time, I think the law is that

11   I have discretion to do what I think is appropriate with

12   respect to constraining discovery.  The rule is that generally

13   the Southern District doesn't use interrogatories, as Judge

14   Peck said.  Again, I can change that if I think the situation

15   is appropriate for it.  Because as I understand it, you agreed

16   to interrogatories with respect to the deposed opt-ins.

17           MR. HEPWORTH:  Yes, your Honor.

18           THE COURT:  The question is, why not interrogatories

19   and other written discovery requests from the other opt-in

20   plaintiffs?

21           MR. HEPWORTH:  Sure.

22           THE COURT:  The compelling argument, just so you know,

23   one compelling argument that Mr. Black has made is that these

24   are opt-in plaintiffs who have chosen to participate in this

25   litigation affirmatively.  Go ahead.

F1MSCOSC

 1          MR. HEPWORTH:  There is a couple things to be said on

 2     that.  I think the statistics Mr. Black gave is 75 versus 25.

 3     It is very telling.  One of the major reasons that this is not

 4     done, present employees fear retaliation, as evidenced by the

 5     fact that we have 25 percent present and 75 percent pass.

 6          That is the exact reason why Justice Peck, as well as

 7     the judge -- and I apologize for not following the judge's

 8     name -- in another Second Circuit case in Shahriar v. Smith &

 9     Wollensky said, experience has shown that opt-ins are generally

10     concerned about retaliation when asked to participate in

11     discovery.

12          Inevitably, the only real reason that defendants seek

13     this discovery, and it was articulated in the transcript, it

14     was articulated by Judge Netburn, it was articulated in Smith &

15     Wollensky, there can only be one reason for it, and that is to

16     persuade individuals from participating in the case.

17          THE COURT:  Let me pause you on that.

18          MR. HEPWORTH:  If I can say one thing, your Honor?

19          THE COURT:  Not yet.

20          MR. HEPWORTH:  I'm sorry.

21          THE COURT:  Unpack that argument to me, because in

22     this case, these plaintiffs who work at Kohl's have decided to

23     participate in the case.

24          MR. HEPWORTH:  Correct.

25          THE COURT:  I will take as an assumption for purposes

F1MSCOSC

1    of this discussion that that concern may have driven the skew

2    in the overall participation rate.  At this point, however, the

3    25 percent of plaintiffs in this case who are currently

4    employed at Kohl's made an affirmative decision to engage in

5    the case as opt-ins.

6            What that tells me is that since they have already

7    made that step, that the additional burden of production

8    associated with the defendants' request would result in the

9    kind of intimidation or chilling that you are suggesting.

10           MR. HEPWORTH:  I can only state the history, your

11   Honor, that there is a reason that when individuals are called

12   for depositions and/or they are called to propound

13   interrogatories or RFPs, inevitably, quite a few drop out.  I

14   can tell you that in every FLSA I have been involved in, they

15   have.  That is the exact reason for the language, as contained

16   in Netburn's decision, Judge Netburn, as well as Judge Peck's

17   decision.  There is a reason for that.

18           That is not the only reason.  If I may, just

19   specifically, Mr. Black noted who they are going to depose.

20   Again, a reading of Magistrate Peck's decision, who was very

21   familiar with these FLSA cases, it is not a pick-and-choose

22   thing.  They do not get to send out interrogatories and RFPs

23   and go, guess what, we are going to depose A, B, and C.  That

24   is not the way it works.

25           Unless we are rewriting the law in the Second Circuit,

F1MSCOSC

it just isn't how it is done.  I realize that that is a broad,

general statement.  Your Honor, you are 100 percent correct.  I

want to get back to something that you said.  You absolutely

have broad discretion.  I would never say the court does not

have broad discretion.

I can only go by what the precedent is in all the

cases that have been before me and my research.  If I found a

case, I would have said to your Honor, putting aside that one

outlier, but I don't have that case.  I can only go by the

cases the defendants' cite, and I can only go by the

jurisprudence that is in front of me, and I can only go by the

decisions mentioned *ad nauseam* in my papers.

Every decision in this circuit has said no.  It is not

just this circuit.  Even the decisions that the defendants

cited, there were exceptions.  They cited four.  If I may, even

the <u>Goodman</u> case, they were only entitled to do 35 out of 567

opt-ins, and in that one particular case, they gave an

additional 25 for interrogatories.

So the overall statement is the defendants are going

to say, depending upon your ruling down the road whether they

get to pick them, whether they are all random, whether it is

50 percent, whatever the case may be, whatever that number is,

those individuals are the ones who have opted in -- I'm

sorry -- those are the individuals whose depositions will be

taken and it is those individuals who will respond to the rogs

F1MSCOSC

1    and to the RFPs.

2          I tell you this, your Honor, if they are going to

3    truly seek -- this can only be seen as a slippery slope.  If

4    they are going to be seeking discovery to close to 500

5    individuals, conversely, if they are able to utilize their

6    resumes, whatever the case may be, then that entitles me to the

7    discovery for every single one of those individual stores,

8    every single one that they worked for.

9          Mr. Black said, well, we want to see what they said to

10   their coworkers.  We want to see what they said in their job

11   application.  We want to hear what they said somewhere else.

12   That's not the way it works.  Because if that was the case,

13   then I am going to get every store e-mail, every DM, and that

14   not the way the FLSA works.

15         The purpose of the opt-in phase two, Phase one, FLSA,

16   is such that you have a representative class.  Those

17   individuals are a representative sampling of the opt-in class,

18   and that is how we would potentially proceed at a decert phase,

19   a final cert phase, or a trial.

20         MR. BLACK:  Your Honor, may I address a couple points

21   that Mr. Hepworth brings?

22         THE COURT:  Please do.

23         MR. BLACK:  Your Honor, frankly, I don't know what to

24   say about Mr. Hepworth's representation that in the Southern

25   District or in the Second Circuit entirely, there are no

F1MSCOSC

1    decisions that permit interrogatories in these type of

2    situations.  In fact, your Honor, the <u>Chipotle</u> decision, the

3    <u>Scott</u> decision, Judge Netburn, I think that decision goes too

4    far, your Honor, respectfully, in many respects.  Judge Netburn

5    permitted interrogatories in that case to the individuals who

6    were receiving the discovery.

7            There are many other cases, your Honor.  In fact,

8    since Mr. Hepworth already agreed to allow interrogatories, I

9    have to admit, this argument takes me a bit by surprise.

10           THE COURT:  You don't need to address it further.  I

11   have read it.

12           MR. HEPWORTH:  If you may, your Honor, I'm not saying

13   they don't get any.  Thank you.

14           THE COURT:  Thank you.  I understand that.

15           MR. HEPWORTH:  Okay.

16           THE COURT:  For me, the question is whether or not

17   there is good cause for me to limit the discovery that is being

18   proposed, is the way that I frame it.  Each case is unique.

19   For me, the question is whether or not the proposed limitations

20   on defendants' process here are beneficial to the process of

21   the case.  I weigh the proposed constraints against the fact

22   that these opt-in plaintiffs have chosen to participate in a

23   lawsuit against the defendants.

24           Let me ask, while you are standing, if I can,

25   Mr. Black, with respect to the number of depositions, you have

1    asked to depose up to 15 percent, where plaintiff wants to

2    depose up to 5 percent.  Can you please explain how and why you

3    chose 15 percent as your proposed number?

4              MR. BLACK:  Yes, sir.

5              Your Honor, we believe that 15 percent representative

6    is a sufficient number of individuals to allow a cross section

7    of cross positions, locations.  Bearing in mind, your Honor,

8    that this discovery in the second phase is not expressly geared

9    toward decertification.  We also have to prepare for a Rule 23

10   motion on the New York claims, your Honor.

11             The limitation that -- let me finish addressing your

12   question which is why 15.  Your Honor, that is a number we

13   thought was reasonable.  I will tell your Honor that we had

14   proposed, as an area of potential resolution, 10 percent to

15   Mr. Hepworth.  Mr. Hepworth declined to agree to that, your

16   Honor.  We held our position at 15 in the letter.

17             Your Honor, the number that Mr. Hepworth has proposed,

18   5 percent, would represent just about 24 out of 500 opt-ins.

19   That is, as your Honor already pointed out, individuals who

20   made the affirmative decision to participate.  As the

21   Morganelli decision in the Eastern District pointed out, these

22   are individuals, who by participating in this sort of lawsuit,

23   have opened up themselves up and should respond to discovery.

24             We take that 24, your Honor, even if we were permitted

25   to select the 24, which we absolutely believe we should be able

F1MSCOSC

```
1    to for reasons we can get into when your Honor would like to
2    hear it, even within that 24, your Honor.  We have two
3    positions at issue in the case.  That might give us 12 AA ASMs,
4    12 CFH ASMs.  We also have to take into account we would want
5    to take some massive New York individuals to be able to deal
6    with what we expect will be a Rule 23 motion on the New York
7    claims.  When we start to dissect that 24 down, your Honor, we
8    all of a sudden get into a situation very quickly where we
9    simply don't have enough depositions to be able to build the
10   record and have due process, your Honor.
11            THE COURT:  Please, go ahead, Mr. Hepworth.
12            MR. HEPWORTH:  With respect to the percentage, they
13   are obviously -- again, I am not going to go into it, your
14   Honor, with respect to the case law that has been cited, but
15   there is 2.6, there is 5 percent, there is 7 percent, there is
16   9 percent.  In the EDS case, there was 60 out of 3000.
17            In the Pet Smart case I just litigated, not with
18   Mr. Black but with his firm, there were 17 out of 333.  A
19   Family Dollar case I litigated with Mr. Black on a Rule 23,
20   there were approximately 20 out of 1700 individuals.
21            So, again, you go by what the jurisprudence is in
22   front of you.  The Second Circuit, the Southern District, has
23   indicated, and has stated in case law ad nauseam, that that
24   representative sample, somewhere between 5 and 10 percent, has
25   been seen as overwhelmingly enough.  Motions for cert have been
```

F1MSCOSC

1    granted, motions for final cert have been degranted and/or

2    denied, motions for final certification have been granted and

3    denied.  That is the standard as it is in this circuit.

4        Again, when you go before the court, you go with what

5    you have in front of you.  The case law in the Second Circuit

6    is overwhelming with respect to the representative basis, and

7    not only just the Second Circuit, but it is throughout all the

8    13 circuits.  Even with the Hoffman v. La Roche case in the

9    Supreme Court, the judicial system benefits by efficient

10   resolutions in one proceeding of common issues.  You can

11   vindicate your rights by the pooling of resources.  That is

12   what is happening here.

13       What I would like to say, and I just want to address

14   one issue, that I believe the court gets, Mr. Black said I am

15   surprised with Mr. Hepworth.  I was never saying he doesn't get

16   any interrogatories.  My sole representation before the court,

17   he gets the interrogatories for those individuals who have

18   opted into the case and that are going to be deposed.  I just

19   want that abundantly clear on the record.  I am not saying I am

20   going contrary to a prior position.

21       THE COURT:  Thank you.  Understood.

22       With respect to the determination as to whom to

23   depose, I did ask with respect to this, as I understand it, the

24   defendant wants their right to choose all of those people who

25   you to depose on behalf of Kohl's and plaintiff wants to

F1MSCOSC

1    have -- call it a baseball type approach to selection of the

2    people.

3              MR. BLACK:  That's correct.

4              THE COURT:  Could you please describe to me your

5    position on this?

6              MR. BLACK:  I would be happy to.

7              Your Honor, Kohl's position is that it has the right

8    to develop its case and its defenses.  Part of that, your

9    Honor, in any case, is the ability to decide which witnesses

10   you may seek to depose.  I can't imagine the human cry that

11   would go out if we were to suggest to plaintiffs' counsel that

12   Kohl's should play a role in deciding who he gets to depose or

13   who he doesn't get to depose.   To unlevel the playing field

14   just doesn't make any sense to us, your Honor.  It restricts

15   our ability to develop the evidence that we need.

16             One point, your Honor, that I think is well worth

17   making and we made in our letter as well, there is a lot across

18   all of the issues that we are dealing with of, as the term

19   goes, do plaintiffs wants to have their cake and eat it too.

20   They want it both ways.

21             When plaintiffs came before your Honor earlier in the

22   case and sought conditional certification, they told your Honor

23   that these individuals were all similarly situated to each

24   other.  Now they express concern about having defendants select

25   witnesses on the theory that defendants might go out and

F1MSCOSC

1    so-called cherry pick witnesses.

2         Either they are all similarly situated and it

3    shouldn't matter who defendants pick or they're not, in which

4    case this case should be decertified at some point.  The

5    plaintiffs can't have it both ways, your Honor.  To allow

6    plaintiffs for even a random sample to play a role here, your

7    Honor, would simply step on Kohl's ability to develop the

8    evidence and to proceed in the second phase.

9         When plaintiffs sought conditional certification, your

10   Honor, they stood here, Mr. Hepworth stood here in front the

11   court and told your Honor that if you just conditionally

12   certify, we will send out notice and defendants will have an

13   ample opportunity to make a fuller record in front of the court

14   and seek decertification.

15        Your Honor alluded to that fact when your Honor

16   granted conditional certification.  They now want to limit it

17   in every way possible, your Honor, and I find that to be

18   inconsistent, and part of that, your Honor, is our ability to

19   determine who we depose.

20        THE COURT:  Thank you.

21        MR. HEPWORTH:  If I may, your Honor.

22        We are seeking to limit in every way possible couldn't

23   be seen as further from the truth.  Although the one

24   proposition is actually not in there, the additional

25   proposition would be they all would be chosen randomly.  To say

F1MSCOSC

1    50/50, we are not saying we want our cake and eat it too.  We

2    are saying you choose 50, we choose 60.  I believe the other

3    was either a third, a third, a third, or 50 percent,

4    25 percent, 25 percent.

5          Regardless of the mechanism, we are not seeking to

6    have our cake and eat it too.  We are saying this is supposed

7    to be a representative sampling.  If you take 500 individuals,

8    you divide it by -- let's say we are doing 25, you go down

9    every -- I am making this up, obviously I am not a

10   mathematician, I apologize -- every 20th letter, you pick that

11   person, and that person is deposed for argument sake.

12         That is not plaintiff cherry-picking.  I am not

13   saying, nor is it me saying defendant is cherry-picking.  What

14   that is is a true representative sample.  But more importantly

15   with that, Mr. Black keeps going with what Mr. Hepworth said.

16   What Mr. Hepworth said -- I don't recall saying that -- but

17   what I will say is the defendants in the first phase, they

18   could have produced individuals.  They sought not to.  There

19   were named plaintiffs and they were deposed.  The defendants

20   could have noticed individuals to say, look, these people do

21   things completely different.  They sought not to.

22         But the idea that we are telling defendants that they

23   have to adhere to the way we are saying it, that is not true.

24   By this way, there is a chance that they say, you know what,

25   there is 25 percent.  I don't know if they are going to do

1    this.  They may not.  We are doing the 25 percent that are all

2    employed.

3           Guess what, that might not be a representative sample.

4    But if it is 25 percent by them, 25 percent by us, 50 percent

5    of a random sampling, 50/50, another mechanism that enables it

6    to be a true representative sampling, and that is how sampling

7    is done.  The scientific studies of sampling are not one person

8    picks.  That is not a sampling.

9           THE COURT:  I would love to get longer into this

10   conversation.  First, how do you respond to what I expect will

11   be Mr. Black's comment attributed to my question, if you do a

12   random sampling, how do you address the fact that they have

13   particularized concerns with respect to the New York Labor Law

14   class action?  You say we need to focus on New York plaintiffs.

15   If he needs to choose a certain number of plaintiffs in New

16   York, how do you address that concern if you are using a

17   "randomized sampling?"

18          MR. HEPWORTH:  Sure.  My initial option was 50/50, but

19   you could choose individuals in New York.  But more

20   importantly, that is not for a motion for decertification.

21   That is actually not the case before the court.

22          Right now, the only thing before the court would be a

23   potential motion for decertification by the defendant, as well

24   as a potential motion for final certification.  To the extent

25   that I seek to bring a motion for Rule 23, which would be under

F1MSCOSC

the state law of New York, I myself, Marc Hepworth, Hepworth,

Gershbaum & Roth, have to show a cross sectional of those

individuals in the State of New York.  So that is going to go

to my potential random individuals in the State of New York.

The idea that Mr. Black is saying we have to oppose it, right

now, there is nothing to oppose.  They do not affirmatively

move under the Rule 23.  I do.

          THE COURT:  Why do you think that defendants have to

contest the ultimate certification motion using randomized

sampling of plaintiffs?  Mr. Black's argument was -- I am

summarizing it -- if these plaintiffs are not similar, they

should be allowed to prove that they are not similar and using

a randomized sample won't show the disparities among the

plaintiff class.

          MR. HEPWORTH:  Sure.  Well, the same way defendant

says plaintiff wants their cake and eat it too, I could argue

the same thing.  By seeking a nonrepresentative sampling, they

are just going to look for individuals who are potentially

present employees and then they're going to go before the

court, see, your Honor -- I am making this up -- there are only

25 AAs that have deposed, there have been no CFHs that were

deposed.  How do we know the CFH is the same as the AA?  So as

a result, these individuals are not similarly situated.

          But if we go back to my original proposition, I didn't

say just randomizing.  I said you choose 50 percent, we choose

F1MSCOSC

```
 1   50 percent.  This way, they can choose whomever they want for

 2   the 50 and they do the same thing.  If anything, your Honor,

 3   that would potentially strengthen the case.  If they think we

 4   think they are cherry-picking and vice versa, then clearly

 5   there is going to be disparate testimony amongst the

 6   individuals, which I can tell you is not going to happen, but

 7   that is what that could lead to.

 8           THE COURT:  Thank you.  I think I have heard enough on

 9   that.  Thank you.

10           With respect to the plaintiffs' discovery request,

11   Mr. Hepworth, as I understand it, both sides agree that there

12   will be 20 requests for admission.  It is not completely clear

13   to me what the defendants' position is with respect to

14   plaintiffs' request for production.  Your order says that

15   plaintiffs shall collectively be permitted to serve up to a

16   total of 50 requests for production, but the letter says 20.

17   Can you tell me which number is correct?

18           MR. BLACK:  Correct.  There is a typo in the letter,

19   your Honor.

20           THE COURT:  It is 50?

21           MR. BLACK:  Yes, your Honor.

22           THE COURT:  In which case, the only question is with

23   respect to the number of interrogatories, 25 versus 50 between

24   plaintiff and defendant, and the number of requests for

25   production, where I think that plaintiffs have asked for
```

F1MSCOSC

 1   unlimited for production.

 2           Can I ask you, Mr. Hepworth, to speak to why you think

 3   both 50 interrogatories and unlimited requests for production

 4   are appropriate in this case?

 5           MR. HEPWORTH:  With respect to the RFPs, the request

 6   for production, the local rules, as well as the Federal Rules

 7   of Civil Procedure, do not give a number.  So what I had

 8   advised Mr. Black was that I would adhere to the Federal Rules

 9   of Civil Procedure.  I wasn't, in essence, saying that I am

10   just going to send 1000 of them.

11           I have litigated numerous cases with other Littler

12   Mendelson as a defense firm, I can just give an example, they

13   have ranged anywhere between 40 and 60.  But the reason why is

14   because they know that the main reason is here and why the

15   rules of civil procedure are what they are is because they know

16   the sample group that they are getting.

17           In other words, they can say, we are seeking RFPs,

18   notices to admit, interrogatories, on the potential opt-ins, so

19   they know what they are asking for.  I am asking for something,

20   but then they could come back with it, and after an ESI

21   conference and we are conferring tomorrow and after demands go

22   out, very often, I want to say that 90 percent of the

23   production is on behalf of the defendant.  They are going to be

24   producing the documentation.  As a result, it is a deeper pool

25   of documents than it is historically for the plaintiff.

F1MSCOSC

1          As I mentioned in the first phase, we gave everything

2    to the defendant that our clients have.  Like I said, I am not

3    seeking unlimited.  I believe that is why, if you look at my

4    proposal -- actually, it says plaintiffs shall be -- I am

5    looking to adhere to the rules of civil procedure and the

6    defendants are seeking to limit that to and that is not what

7    the rules say.

8          THE COURT:  Understood.

9          With respect to your request for 50 interrogatories,

10   Mr. Hepworth, can you please explain that?

11         MR. HEPWORTH:  Sure.

12         At this point, we don't know who the individuals are

13   who defendants are seeking to produce in second phase.  We are

14   going to receive some discovery via the RFPs, then we are going

15   to have a meet and confer, and then there are going to be,

16   based upon whether it is a liability witness, willfulness

17   witnesses, then we are going to have a better feel of who they

18   are.

19         I mentioned this to Mr. Black when we had our

20   conference.  As I stand here, your Honor, if defense counsel

21   mutually will agree to the number between 20 and 50 is 35, to

22   take one matter off your docket, I will go that route.

23         THE COURT:  Understood.

24         MR. BLACK:  Would you like me to respond to that, your

25   Honor?

F1MSCOSC

```
 1              THE COURT:  Please.

 2              MR. BLACK:  Your Honor, let me cut to the chase.  If

 3    we can agree to 50 document requests, we will agree to

 4    35 interrogatories, your Honor.  Take it off the plate.

 5              The concern I have about the document requests, your

 6    Honor, is I can't rely on what Mr. Hepworth may or may not have

 7    done in other cases.  The fact that he generally only serves a

 8    certain number, he is going to comply with the federal rules.

 9    As I recall, the federal rules don't set a limit on document

10    requests.  That usually is handled as part of a court

11    conference.

12              Leaving it open like that, your Honor, is not

13    something we think is acceptable, but if we can limit it to 50

14    document requests, we are willing to go to 35 interrogatories.

15    Although I will note, your Honor, plaintiffs already served

16    16 interrogatories in the case and they were very broad.  We

17    responded to them already.

18              MR. HEPWORTH:  With respect to the interrogatories

19    that were served, maybe it should have been in the letter, many

20    of those interrogatories were solely for first phase discovery.

21    We are completely a new second phase for the same reason they

22    are permitted, I said, serve five individuals on behalf of our

23    own clients.  They still did merits-based discovery on the

24    named plaintiffs.

25              The amendment to what Mr. Black said was, to the
```

1   extent in the first phase wherein the defendant said in their

2   interrogatories or RFPs we are saying that this is appropriate

3   for second phase, I will be sending a followup letter and I

4   will not be repetitive in my rogs, but if the defendants had

5   originally responded this is more appropriate for second phase,

6   my letter is going to say, please respond to rog and/or RFP,

7   whatever number it is, as we are now in second phase.

8           THE COURT:  Thank you.

9           Mr. Black, can I ask you whether or not you would be

10  able to conduct the discovery that you have requested in less

11  than nine months?

12          MR. BLACK:  Your Honor, respectfully, I don't believe

13  so.  I will explain why.

14          At 15 percent of the deponents, your Honor, that would

15  be approximately 70 out of 500 individuals.  We would want to

16  serve written discovery before we do so.  That would take 30

17  plus days, your Honor, because we often don't get those

18  responses in 30 days.  If we serve them right out of the gate

19  in the month we are in, more like two months in.

20          It is our experience, your Honor, that, as

21  Mr. Hepworth mentioned, sometimes individuals don't respond.

22  Individuals may decide to leave the case.  If they do, they

23  need to be replaced.  Then we would start deposing these

24  individuals once we had the benefit of the written discovery,

25  your Honor.  And even at 70, over the course of those months,

F1MSCOSC

| | |
|---|---|
| 1 | your Honor, that may require depositions every other day for |
| 2 | four months to finish within the six months, your Honor. |
| 3 | Frankly, your Honor, even at a firm of our size, that would be |
| 4 | very difficult, given that our litigation team is rather tight. |
| 5 | Thus, the nine months, your Honor.  Frankly, we |
| 6 | thought more than that would have been necessary, but in the |
| 7 | interest of trying to compromise, we are able to agree with |
| 8 | plaintiffs' counsel on the nine-month period. |
| 9 | MR. HEPWORTH:  If I may, your Honor. |
| 10 | Just to address a couple things that was said.  I just |
| 11 | want it on the record now.  I am definitely going to come up |
| 12 | against this in the future.  The defendants are going to say, |
| 13 | the ESI that you are seeking is cost prohibitive.  We are not |
| 14 | giving you what you want.  We are making an application to the |
| 15 | court and we are going to seek that you pay for X cost. |
| 16 | We, right now, based upon what we are seeking, it will |
| 17 | not be cost prohibitive.  My only point is, they are going to |
| 18 | be seeking interrogatories from individuals, RFPs from |
| 19 | individuals, notices to admit.  For us to properly defend and |
| 20 | prosecute our claim for all those individuals, there is going |
| 21 | to be store- level ESI, higher-up ESI to wherever it goes.  I |
| 22 | don't want to have the argument down the road, no, counselor, |
| 23 | that is cost prohibitive.  This is their suggestion.  This is |
| 24 | their idea. |
| 25 | I know I mentioned it briefly in a footnote, and we |

1    are not going to get into a ESI discussion today, but so when

2    we have this conversation in a month, two months, three months,

3    whatever the court's ruling is, it is here, it is on the

4    record.

5        The one footnote I gave was the case, again, that our

6    respective firms are litigating, was <u>Pet Smart</u>.  There were

7    300,000 pages of ESI.  30,000 of them were actual documents.

8    270,000, approximately, were ESI for those 20 opt-ins.  I just

9    don't want to have that argument moving forward, when I

10   approach defendants, I speak to the ESI people and say, look,

11   you have to proceed ABC, you are seeking all the opt-in

12   discovery, you are seeking 72 opt-ins.

13       Putting aside that is not permitted in the Second

14   Circuit, I just want that on the record now that it is

15   understood.  More importantly, with respect to going less than

16   six months, counsel is right.  Littler Mendelson with, I think,

17   over 1000 lawyers in their law firm is saying they are going to

18   be hard pressed to do it.  The whole point of the class and/or

19   collective action is so that individuals can pool their

20   resources.  The Supreme Court came down with that decision.

21       By permitting 70 plus depositions, 500 approximate

22   individual interrogatories, that is not a pooling of resources.

23   That is taking everyone and doing it, and I am going to be

24   perfectly frank with the court, and come back and probably do

25   everyone's interrogatories and get it back to counselor in 30

F1MSCOSC

1     days, we probably would be hard pressed.

2              MR. BLACK:  Your Honor, may I address a couple of

3     those points?

4              THE COURT:  Please do.

5              MR. BLACK:  Your Honor, first of all, one point I

6     wanted to make earlier, I am glad Mr. Hepworth raised the

7     point.  This idea of pooling resources, or I think what Mr.

8     Hepworth refers in his papers as representational proof.

9              I think we need to make clear one thing, your Honor.

10    That is, there is no representative action here yet, your

11    Honor.  It is after the decertification motion that final

12    certification on the FLSA claim is decided.  We have a

13    conditional certification in this case, your Honor.  To the

14    extent Mr. Hepworth's argument is this ought to be based on a

15    representational proof and limit our discovery severely on that

16    basis, your Honor, we are not there yet.

17             To the point Mr. Hepworth just made, your Honor, on

18    ESI, I have been troubled today by Mr. Hepworth's reference to

19    other cases we have handled against his firm.  They're not this

20    case.  What I can tell you is, we often get into that battle,

21    and I expect we will here too regardless, your Honor, of what

22    you do with respect to the numbers of depositions, the number

23    and extent of written discovery.

24             Mr. Hepworth's firm tends to seek very broad

25    electronic discovery.  We do get into those battles about cost

1    and preservation.  I expect we will get into them here.  I say

2    that only, your Honor, because I don't want to sit here a month

3    from now and have Mr. Hepworth try to throw back at me what he

4    just said to your Honor.  We may well be here on that issue,

5    your Honor.  It has nothing to do with what you decide.

6            MR. HEPWORTH:  Can I say one thing, your Honor?

7            THE COURT:  Yes, please.

8            MR. HEPWORTH:  The court just said, and it just came

9    down in Scott v. Chipotle, and it is on the second page of my

10   papers and it is *ad nauseam* in this circuit:  The court is not

11   persuaded that limited or representational discovery will harm

12   Chipotle's ability to maintain a full defense.

13           This is the important sentence:  The FLSA envisions a

14   collective action process in which claims of similarly-situated

15   workers are adjudicated collectively rather than individually.

16   That is the FLSA.  That is the law in our circuit.  Thus --

17           THE COURT:  Thank you.  I have heard enough.

18           MR. BLACK:  Okay.

19           THE COURT:  I am going to rule on this so that you can

20   move forward in this case.

21           As Judge Netburn observed:  "While a party must be

22   afforded a meaningful opportunity to establish facts necessary

23   to support his claim, quoting in re Agent Orange, the court has

24   broad discretion to limit discovery, particularly when such

25   discovery may be duplicative, more readily obtained from

F1MSCOSC

1    another course, or when the burden or expense outweighs the

2    benefits of discovery."

3         I am first, as an overarching point, going to accept

4    the parties' agreement that nine months is the appropriate

5    amount of time to conduct discovery in this case.  It is an

6    extensive amount of time, but I understand that both parties

7    believe it is necessary.  Given the scope of the litigation, I

8    believe that it is appropriate.

9         Now, with respect to defendants' request for

10   discovery, apologies to all the other courts in the Second

11   Circuit who apparently decided the opposite, I am going to

12   permit defendant to take the discovery that they have requested

13   with respect to interrogatories for press or production and

14   request for admission from the named plaintiffs and all of the

15   opt-ins.

16        Now, with respect to the opt-ins, while I recognize

17   the FLSA provides for collective action, we have not yet

18   determined that this can proceed as a collective action.  Each

19   of the opt-in plaintiffs has made a conscious decision to

20   become a plaintiff in this case.  I am not willing to constrain

21   the defendants' right to frame its defense in the way that it

22   believes appropriate in the face of the action.

23        I think that there are natural constraints built into

24   the overall cap on the amount of time that I am allowing for

25   discovery, and with that constraint in time, I expect that,

despite defendants' resources, they will have to make some

decisions about what scope of discovery is necessary.  Rather

than making an arbitrary decision to limit it, the scope of the

discovery that they are taking, I am going to accept their

proposals with respect to written discovery for named

plaintiffs, from the opt-ins, the number of depositions, and

the determination as to who to depose.

        I do believe that defendants have the right to

construct their defense, and I do not believe that there is an

obligation for them to present, be constrained in their

defense, through the selection of a random sample of defendants

to depose.  The issue here in front of me with respect to

collective certification will be whether or not this group of

plaintiffs was similarly situated.  If defendant can prove that

they are not, they should have the opportunity to do so.

        Similarly, I am going to grant the plaintiffs' request

for discovery as modified based on the discussion just now

tentatively limiting the number of interrogatories to 35 and

their request for production to 50.  Both sides have agreed on

20 requests for admission.

        Similarly, the defendants and plaintiffs have a

difference of position with respect to the number of

depositions that plaintiff can take in the case, and I am going

to accept plaintiffs' proposal and allow them to take the

depositions that they proposed in the proposed scheduling order

F1MSCOSC

that was submitted to me.  Overall, you are the masters of your

cases.  I am going to allow you to make your choices about how

best to prosecute and defend it.

With respect to the issue of disclosure, which we did

not discuss, namely, when each party will disclose witnesses

that will be used in the motion practice.  I am going to adopt

what I am going to describe as a hybrid position.  Plaintiff

has asked that the defendants' supplement the Rule 26(a)(1)

disclosures 75 days before the end of discovery.  Given that, I

expect discovery to be completed by the end of the second

phase.

I appreciate the request for disclosure so the

depositions can be completed before the end of the discovery

phase.  I am going to order that the defendants disclose those

people no less than 30 days before the end of the discovery

period so that the plaintiffs can take any depositions of those

people that have not already been conducted and obtain

discovery from them rather prior to the close of the discovery

period.

With respect to the briefing schedule, you have both

agreed on the timeline, which is to allow motions to be filed

60 days after the close of the post conditional certification

discovery.  Oppositions to the motion will be filed 60 days

after service of the motion.  The replies will be filed 30 days

after service of the motion.

F1MSCOSC

1          I have not yet heard your rationale for such an

2     extended period for the oppositions.  Barring a strong argument

3     from you now, I am going to change that to 30 days.

4          MR. HEPWORTH:  I can tell you now, your Honor, with

5     respect to your ruling, there will now potentially be 72

6     depositions that have to be digested.  So to the extent that

7     the defendant puts forth, I just also want to note my objection

8     on the record to your ruling and we will deal with it

9     accordingly.

10          THE COURT:  No, we will deal with it now.  What is the

11     basis for your objection?

12          MR. HEPWORTH:  My objection to your ruling, your

13     Honor, is the fact that it is usurping the local jurisprudence

14     as well as the --

15          THE COURT:  Explain that to me.

16          MR. HEPWORTH:  The rulings in the Second Circuit have

17     been that there is going to be representative discovery.  I

18     feel by allowing all 572, that is going contrary to what the

19     FLSA has put forth.  As I said, I am just noting my objection

20     on the record, your Honor.

21          THE COURT:  That is fine.  You have noted your

22     objection.  You have not pointed me, just for the record, to

23     any precedent that establishes anything but that I, the court,

24     have discretion to confine discovery.

25          Each of the opt-in plaintiffs made a conscious

F1MSCOSC

1    decision to participate in this litigation.  The question is,

2    do I impose upon the defendants' ability to defend themselves

3    against this litigation by imposing the constraints that you

4    have described.

5         I haven't heard that this will be and I don't believe

6    that this will be a particular burden on any of the individual

7    plaintiffs.  I understand that it will be difficult for you as

8    plaintiffs' counsel to address the concerns, but the issue here

9    is that defendants should have the opportunity to defend

10   themselves.

11        There is no precedent, that I am aware of, that

12   constrains my ability to make a measured determination as to

13   what constraints are appropriate in the discovery.  So your

14   objection is noted, but in the absence of anything other than

15   data points about what other courts have done under other

16   factual circumstances, in the absence of a case that says that

17   I must do it in the way that you have described, I am going to

18   do it the way that I have done it.

19             MR. HEPWORTH:  I understand, your Honor.

20             THE COURT:  Thank you.

21             MR. HEPWORTH:  I believe you wanted me to address the

22   30 days?

23             THE COURT:  Please do.

24             MR. HEPWORTH:  So as a result of the potential 70 some

25   odd depositions, as well as the potential 90 depositions on

F1MSCOSC

1    behalf of the plaintiff, there is going to be about 160, 170

2    depositions that are going to potentially be in this case.  As

3    a result, when the motion for decert and/or final certification

4    is done, that is going to take quite the digestion on the

5    behalf of the plaintiffs as well as the defendants.  Moreover,

6    that is one of the reasons why, before the ruling, we had

7    agreed upon 60 days.

8         Also, unless I am mistaken, depending on when this

9    rule is officially the date, and I apologize, I am just trying

10   to figure ahead, nine months is going to be October, which is

11   going to bring us to holiday time.  As a result, both parties

12   have mutually agreed 60 days would be appropriate.

13        THE COURT:  Thank you.  Mr. Black?

14        MR. BLACK:  Yes, your Honor.

15        I do agree with Mr. Hepworth that there is going to be

16   a lot going into these oppositions.  I am sure your Honor is

17   familiar with them, but they are very robust filings involving

18   lengthy briefing, complex issues, and many exhibits.  That is

19   the reason why we had proposed that time period, your Honor.

20        THE COURT:  Thank you.

21        Then I will accept it.  As for when I anticipate

22   entering the scheduling order, what I would like to ask the

23   parties to do, since you have done so well so far, is to send

24   to me on my chambers e-mail account a Word version of the

25   scheduling order that reflects the rulings that I just made.

F1MSCOSC

1          I will order it.  I will order it promptly.  That will

2     mean that you are, indeed, going to be beginning this process

3     now.  Let me say this to be clear.  The nine-month deadline

4     that I am establishing for completion of discovery is, in my

5     view, an extended period of time, one that was agreed to by the

6     defendants in full knowledge of the scope of the discovery that

7     they are seeking to take.

8          I expect that the discovery will be completed by that

9     date.  I would extend it for good cause, but cause would have

10    to be significantly good in order for me to grant an extension.

11    You should expect to complete discovery by that deadline and

12    you should schedule yourselves appropriately in order to ensure

13    that you meet that deadline.

14         MR. BLACK:  Your Honor, I had one question, one point

15    of clarification.

16         THE COURT:  Please.

17         MR. BLACK:  I understood your Honor to rule that

18    defendants must supplement the Rule 26 disclosures 30 days

19    ahead of the end of discovery to identify individuals they may

20    rely upon?

21         THE COURT:  Correct.

22         MR. BLACK:  We expect that plaintiffs will be filing

23    their Rule 23 motion at the same time.  In case you didn't say

24    this, your Honor, it is --

25         THE COURT:  I think it should be reciprocal, yes.

F1MSCOSC

```
1              Do you have a view on that, Mr. Hepworth?

2              MR. HEPWORTH:  No.

3              THE COURT:  It will be reciprocal.

4              Is there anything else that we should discuss?

5              MR. BLACK:  I don't believe so, your Honor.

6              THE COURT:  Thank you very much.  We are adjourned.

7              MR. HEPWORTH:  Thank you, your Honor.

8                              o0o

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```